[No. 31602. Department One. September 6, 1951.]

MANAGEMENT, INC., *Appellant*, v. ANNE SCHASSBERGER *et al.*, *Respondents*.[1]

'Reported in 235 P. (2d) 293.

*Halverson & Applegate* and *Jack M. King*, for appellant.

*Mark C. Delle*, for respondent Schassberger.

*George W. Wilkins*, for respondents Bryant.

HILL, J.—Two questions are presented: (1) Did the defendants or any of them violate an agreement not to engage in the laundry or dry cleaning business for a period of five years? and, (2) if so, could a covenant to pay liquidated damages of ten thousand dollars for the breach of the agreement be enforced, or did it constitute a penalty?

In March, 1946, Management, Inc., purchased from Anne Schassberger, a widow, and Frank H. Bryant and Carolyn F. Bryant, his wife (the latter being a daughter of Mrs. Schassberger), a laundry and dry cleaning business in the city of

Yakima, the purchase price being one hundred thousand dollars. The bill of sale contained the following provision:

"In consideration of the sale of the foregoing business and property, Vendors agree not to engage in the laundry or dry cleaning business in Yakima, Washington, for a period of five (5) years after March 18, 1946, directly or indirectly; Except that Vendor, *Frank H. Bryant, shall have the right to engage in such laundry or dry cleaning business as an employee as long as he shall not, directly or indirectly, have an interest in the business as an owner or part-owner thereof.*

"In the event either of said Vendors shall breach this agreement, he or she shall be liable to Vendee in the sum of Ten Thousand ($10,000.00) Dollars, which is hereby agreed to be liquidated damages for the breach of said agreement." (Italics ours.)

In August, 1946, the Bryants purchased, for twelve thousand dollars, certain real property hereinafter referred to as the Moxee avenue property, which included a building that had been erected to house a dry cleaning and laundry business. In October of that year, the Bryants sold the property to Mrs. Schassberger, likewise for twelve thousand dollars. She immediately leased the property for five years to another daughter and her husband, Clarence D. Purkhiser, Jr. The lease required that "the premises during the term of this lease shall be used for the conduct of a dry cleaning and laundry business and none other," but Mrs. Schassberger denies any knowledge that that provision was in the lease.

Beginning November 17, 1946, Purkhiser operated a dry cleaning and laundry business on that property, under the name of Star Dry Cleaners and Shirt Laundry, which will be hereinafter referred to as "the Star," with Bryant as manager. Five months later (April 12, 1947) the Purkhisers sold the Star to Alvin V. Ross and his wife and terminated their lease with Mrs. Schassberger. By the same instrument that terminated the Purkhiser lease, Bryant was given possession of the premises at a monthly rental of one hundred fifty dollars, with an option to buy the premises, the price again to be twelve thousand dollars,

".  .  .  on the first date reasonably possible after said premises have been cleared and released from the probate proceedings of the Estate of the late husband of the Party of the First Part [Mrs. Schassberger] of which said premises are now for certain purposes considered a part of the assets of said estate."

The Bryants immediately signed their possessory rights and option to purchase to Ross and his wife.

Mrs. Schassberger deeded the Moxee avenue property to the Bryants September 11, 1947, for twelve thousand dollars; and on the same day and for the same consideration, the Bryants deeded the property to Mr. and Mrs. Ross. Ross was employed in a meat packing business in Yakima and, although he was at the Star every day, he devoted no time to the business and Bryant continued as the active manager.

Management, Inc., commenced this action against Mrs. Schassberger, Mr. and Mrs. Bryant, and Mr. and Mrs. Ross, alleging that Mrs. Schassberger and Mr. Bryant had violated the restrictive covenant in conspiracy with Mr. and Mrs. Ross through the operation of the Star. Plaintiff requested injunctive relief and ten thousand dollars as liquidated damages from each of the defendants.

After the commencement of the action, the Moxee avenue property, together with the laundry and dry cleaning business conducted thereon, was sold, so that, when the case was tried, none of the defendants had any interest therein and there was no necessity for injunctive relief.

The testimony on behalf of the plaintiff, which takes up 316 pages of the statement of facts, is practically all from defendants Frank H. Bryant, Anne Schassberger, and Alvin V. Ross, who were called as adverse witnesses. At the conclusion of the plaintiff's case, all the defendants challenged the sufficiency of the evidence.

Referring to the sufficiency of the evidence against Mrs. Schassberger, the trial court said:

"I believe that the evidence fails to establish that Mrs. Schassberger was engaged in the dry cleaning or laundry business, this business which is shown to have existed here,

the Star Dry Cleaning and Shirt Laundry. I don't believe that she had an interest in that business, and I think that the evidence utterly fails to show that she did have an interest in that business."

As to Mrs. Schassberger, the challenge was sustained and the action was dismissed.

The other defendants presented no additional evidence, and the trial court found that Mr. Bryant had acquired an interest as part owner of the Star and that there had been a violation of the covenant not to enter into the laundry or dry cleaning business as owner or part owner, and that Mr. and Mrs. Bryant and Mr. and Mrs. Ross had conspired to violate the restrictive provision of the bill of sale. The trial court, however, held that the ten thousand dollars referred to as liquidated damages in the bill of sale was actually a penalty, and, there being no proof of any actual damage, it allowed nominal damages only, to wit, a judgment of ten dollars against Mr. and Mrs. Bryant and Mr. and Mrs. Ross. The plaintiff appealed.

There was ample evidence to support the conclusion of the trial court and the dismissal of the action as to Mrs. Schassberger. On that phase of the case the trial court relied upon *McKeighan Wachter Co. v. Swanson*, 138 Wash. 682, 245 Pac. 10, which is directly in point. In the two cases urged by the appellant as a basis for holding that Mrs. Schassberger had violated the restrictive covenant against engaging in the dry cleaning and laundry business by acquiring the Moxee avenue property and leasing the building for the purpose of conducting a dry cleaning and laundry business therein (*Merager v. Turnbull*, 2 Wn. (2d) 711, 99 P. (2d) 434, 127 A. L. R. 1142; *Lyle v. Haskins*, 24 Wn. (2d) 883, 168 P. (2d) 797), we had situations in which the persons held liable were actively participating in the conduct of the competing business. The trial court in its memorandum opinion quite properly distinguished those cases on that basis. We affirm the dismissal of Mrs. Schassberger.

We come now to a consideration of whether Bryant violated the restrictive covenant, and that depends upon

whether he became the owner or part owner of the Star. There was evidence which would have supported a conclusion that Bryant was always an employee, first of Purkhiser and then of Ross; but there was also ample evidence to support the trial court's conclusion that he became a part owner of the business. We are content to accept the facts as found by the trial court, and to hold that Bryant did become a part owner of the Star and that, consequently, he violated the restrictive covenant against engaging in the laundry and dry cleaning business.

We find no merit in the claim by the Bryants of estoppel or laches as barring the prosecution of this action.

There remains the question of whether the appellant was entitled, as it contends, to a judgment of ten thousand dollars against the Bryants, and that, in turn, depends upon whether the ten-thousand-dollar payment provided for in the bill of sale in the event of a breach of that covenant, was intended as liquidated damages or as a penalty.

The distinction between liquidated damages and a penalty is well stated in 15 Am. Jur. 672, Damages, § 241:

"As distinguished from liquidated damages, a penalty is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. It is the payment of a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as in terrorem of the offending party, while the essence of liquidated damages is a genuine covenanted pre-estimate of damages."

We are loathe to interfere with the rights of parties to contract as they please between themselves, and the fact that the parties to a contract call a sum stipulated to be paid in case of breach of the contract liquidated damages is a circumstance to be given serious consideration in determining whether it is in fact liquidated damages. However, the fact that the parties have so designated the sum to be paid is not necessarily controlling or conclusive. Courts looking to the intent of the parties have not hesitated to

hold that express stipulations for liquidated damages were really stipulations for penalties, and vice versa. *Smith v. Lambert Transfer Co.*, 109 Wash. 529, 187 Pac. 362; 15 Am. Jur. 677, Damages, § 246.

In 1827 it was said in *Crisdee v. Bolton*, 3 Car. & P. 240, 172 Eng. Rep. 403, that the law relative to liquidated damages has always been in a state of great uncertainty, occasioned by judges' endeavors to make better contracts for parties than they have made for themselves. The intervening years and decisions have not resolved that uncertainty, but have compounded it. However, there is a notable trend away from what at one time seemed to be a disposition to look with disfavor upon provisions for stipulated damages, and to treat them as penalties, so that only such losses as could be proved could be recovered. At the present time it may be said that the courts

" '. . . look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts and because adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense.' " *Wise v. United States*, 249 U. S. 361, 63 L. Ed. 647, 39 S. Ct. 303, as quoted in *Meuwissen v. H. E. Westerman Lbr. Co.*, 218 Minn. 477, 484, 16 N. W. (2d) 546.

We have had occasion in the recent case of *Mead v. Anton*, 33 Wn. (2d) 741, 207 P. (2d) 227 (a case on which appellant relies heavily, devoting fifteen pages of its brief to it and quoting from it extensively), to discuss the general principles applicable to agreements made in advance of a breach and fixing the damages therefor. We there used the following quotation from 1 Restatement of the Law of Contracts 552, § 339:

"Liquidated Damages and Penalties.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

This we adopt as a statement of the rule applicable to the present case. We have no question about (b), as it must be conceded that, in this type of case, the harm caused by the breach usually is incapable of accurate estimation. Our difficulty is with (a), *i.e.*, whether the amount, ten thousand dollars, is a reasonable forecast of just compensation for the harm caused by the breach.

In the case of *Mead v. Anton, supra*, we held that five hundred dollars a month as liquidated damages for the violation of an agreement made, in connection with the sale of a restaurant business, not to open, for a ten-year period, a competing restaurant within a radius of five hundred yards of the restaurant sold "was not unreasonable; that the agreement provides for the recovery of liquidated damages and not a penalty." The trial court in the present case pointed out a factor that distinguishes it from *Mead v. Anton, supra*, when it said:

". . . The provision of liquidated damages calls for the payment of a definite sum of $10,000.00, regardless as to whether the breach occurred during the first month of the five year period when the damages, if any, would have been comparatively large, or during the last month thereof when such damages, if any, would have been relatively small."

Certainly a provision that makes the amount of the damages commensurate with the extent of the breach, as in *Mead v. Anton, supra*, is an important factor in determining whether the amount of damages agreed upon in advance of breach is a reasonable forecast of just compensation for the harm caused by the breach. However, we are aware that damages fixed on a daily, weekly, or monthly basis may be excessive, just as we are aware that there may be circumstances where, if there is damage at all, it may be of a character that can be properly compensated for by a lump sum payment.

■  It must be conceded that there is substantial modern authority for holding that, when a business is sold for one hundred thousand dollars, the amount of ten thousand dollars specified as liquidated damages for vendor's breach of an agreement not to engage in a competing business in the same community for five years, would be held enforcible as liquidated damages, and not unenforcible as exacting a penalty. See *Beiser v. Kerr*, 107 Ind. App. 1, 20 N. E. (2d) 666. However, each case must in a great measure depend upon its own facts and circumstances, and what seems to us the controlling fact and circumstance in this case which makes the ten thousand dollars a penalty rather than "a reasonable forecast of just compensation for the harm that is caused by the breach" is that Bryant was permitted to remain in the laundry and dry cleaning business in Yakima as an employee, with no limitation except that "he shall not, directly or indirectly, have an interest in the business as an owner or part-owner thereof." As the trial court pointed out, it must have been contemplated that he would continue in a managerial capacity, for that had been his position and the appellant itself employed him in that capacity for a time.

Cases dealing with the extent of the right of one who has sold his business and has entered into a covenant not to engage in a competitive business (for a reasonable time and within a reasonable area) to accept employment from a competitor, are numerous. The weight of authority, as indicated by the annotation in 93 A. L. R. 121, is that such employment will not constitute a breach of the covenant unless it is likely to result in substantial interference with the business sold. In *Haley Grocery Co. v. Haley*, 8 Wash. 75, 35 Pac. 595, we held that employment as a salesman with a competing company did not constitute a violation of a covenant not to engage in the grocery business. In both *Canady v. Knox*, 48 Wash. 685, 94 Pac. 652, and *Nelson v. Brassington*, 64 Wash. 180, 116 Pac. 629, we held that such covenants were violated when the employment was as manager of the competing business.

Cases dealing with the extent of the right of one who has sold his business and has entered into a covenant not to engage in a competitive business, but has reserved the right to become an employee of a competitor, are few in number. The case of *General Bronze Corp. v. Schmeling*, 213 Wis. 150, 250 N. W. 412, 93 A. L. R. 114, supports the trial court in the instant case in its position that, where a covenant not to engage in a certain business permits the covenanter to become an employee of a competitor of the covenantee, he may be employed in a managerial capacity. The Wisconsin case holds that his compensation as such employee may even include a percentage of the profits without there being any violation of the covenant.

We are not called upon, in the present case, to go as far as did the Wisconsin court in the opinion just cited, for we have here a very elastic exception to the restrictive covenant, with only ownership or part ownership being prohibited so far as Mr. Bryant is concerned.

The trial court found, and we agree, that Mr. Bryant violated his agreement and did have an interest in the Star as part owner thereof. Inquiry as to the extent that he could have, with propriety, participated as an employee-manager in the operation of the Star or any other laundry or dry cleaning establishment is material only as it bears upon the extent to which the appellant here could have been damaged by Bryant's ownership or part ownership of the competing business, as that has a direct bearing upon whether the stipulated sum of ten thousand dollars was a penalty or "a reasonable forecast of just compensation for the harm that is caused by the breach."

It does not seem possible that the parties could have contemplated that the amount of ten thousand dollars was "a reasonable forecast of just compensation for the harm" that would be occasioned appellant by Mr. Bryant's ownership or part ownership of a laundry and dry cleaning business, in view of the right accorded him to be the manager of such a business. We conclude, with the trial court, that the ten-thousand-dollar liquidated damage provision was,

so far as Mr. Bryant was concerned, a penalty and not enforcible.

The fact that the agreement for the payment of ten thousand dollars cannot be enforced does not relieve the Bryants from liability for violating their covenant not to engage in the laundry and dry cleaning business as owner or part owner; and, since no actual damages were shown, the trial court fixed the damages at the nominal amount of ten dollars. However, the trial ended April 17th and the trial court did not file its memorandum opinion holding that the ten-thousand-dollar damage provision was a penalty until May 27th, and it seems to us that the trial court should then have offered appellant an opportunity to show its actual damages, if any.

■ Under ordinary circumstances, a party should put in all of his evidence on all theories on which he relies before he rests his case, but in a case of this kind, where proof of actual damage is difficult and probably will require a considerable amount of time, it would seem that, as a practical matter, the plaintiff should be entitled to a ruling on the question of whether the provision in question was in fact an agreement for liquidated damages or was a penalty provision, before being required to go forward with evidence as to actual damages.

No relief is asked by appellant in its briefs against Mr. and Mrs. Ross, and the appeal so far as they are concerned seems to have been abandoned.

The judgment of dismissal as to respondent Anne Schassberger is affirmed.

Since the appellant has not asked for the relief which we have indicated should be accorded it so far as respondents Bryant are concerned, and may not desire to avail itself of an opportunity to show its actual damages, if any, the judgment of nominal damages in the amount of ten dollars against Frank H. Bryant and Carolyn F. Bryant, his wife, is affirmed, unless, within ten days from the filing of the remittitur in the superior court for Yakima county, the appellant shall request permission to reopen the case for the purpose of showing the actual damages it has sustained

by reason of Mr. Bryant's violation of the restrictive covenant, and, if such a request is made, the case shall be reopened for the taking of further testimony on that issue only.

Respondent Anne Schassberger will recover her costs on this appeal. If no request for reopening the case is made by appellant, respondents Bryant will likewise recover their costs on this appeal; if a request for reopening is made, costs as between appellant and respondents Bryant will abide the determination of the issue to be litigated.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.

