[No. 36746. Department One. December 5, 1963.]

LUCY NADINE UNDERWOOD, *Individually and as Executrix, Respondent*, v. JOSEPH P. STERNER *et al., Appellants.*\*

\*Reported in 387 P. (2d) 366.

*Monheimer, Schermer, Van Fredenberg & Smith,* by *John M. Schermer,* for appellants.

*Powell, Livengood, Dunlap & Silvernale,* by *Grant J. Silvernale, Jr.,* for respondent.

HILL, J.—This is an action for damages by the owner of a tract of land for the breach of a contract to purchase it. From a judgment of $50,000, with interest from the date of the breach of the contract, the defendant-purchaser appeals.

December 9, 1960, a fire destroyed a building on the tract which had been occupied by two tenants: P-X, a supermarket, as sublessee of Highland Realty, Inc., and the Boeing Aircraft Company, as lessee. The owner gave notice of intention to restore the premises, which kept the leases in effect, the rent being abated during the period of restoration.

The defendant, Joseph P. Sterner,[1] made an offer of $200,000 for the property, which was refused, and a subsequent offer of $250,000 which was accepted. A document denominated "EARNEST MONEY RECEIPT and AGREEMENT" was signed January 14, 1961.

---

[1] We shall for the purposes of this opinion, be referring to Joseph P. Sterner when the word "defendant" is used; however, his wife and their marital community are parties defendant.

The earnest money consisted of $1,000 cash and a promissory note in the sum of $24,000 due on February 14, 1961. Terms agreed upon were: a down payment of $100,000, with deferred payments on the balance of $150,000 to be secured by a mortgage which the owner agreed could be subordinated to a construction mortgage (not to exceed $400,000). The closing date was fixed as "not later than February 14, 1961."

The defendant, on February 28, 1961, refused to purchase the property. This action was then commenced by the owner. Reference to other material factual details will be made as we consider the various contentions of the defendant.

The defendant first urges that he was induced to sign the earnest money receipt and agreement by fraudulent inducements and the concealment of material facts by the owner and her attorney.

It is his position that the owner and her attorney knew that he was purchasing the tract with the intention of putting up a larger building than the one which had burned, and that financing for such a building could only be secured if the tenants were willing to modify and extend their leases, taking additional space and paying additional rent. It is his further position that the owner and her agent, despite their knowledge to the contrary, led him to believe that the tenants were in accord with such a plan.

On conflicting testimony, the trial court found against the defendant on these postulates of fraud, and there is substantial evidence to sustain those findings. This, in itself, disposes of the claim of fraud for, obviously, the trier of the facts did not find the evidence of fraud offered by the defendant to be clear, cogent and convincing. This court will not substitute its findings of fact for those of the trial court when the latter are supported by substantial evidence. *Hoke v. Stevens-Norton, Inc.* (1962), 60 Wn. (2d) 775, 375 P. (2d) 743; *Hallin v. Bode* (1961), 58 Wn. (2d) 280, 362 P. (2d) 242; *Wickre v. Allen* (1961), 58 Wn. (2d) 770, 364

P. (2d) 911; *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183.

 Moreover, there are subsequent acts by the defendant which constitute a waiver of any such claims. The earnest money receipt and agreement was signed Saturday evening. The defendant met with the representatives of P-X on the following Monday and Wednesday (January 16 and 18) and learned what was readily ascertainable at any time—that an extension of the lease was not desired. However, they gave an extension of time to January 30 to the defendant for an election as to whether he would rebuild.

February 1, 1961, the defendant advised P-X that he would not rebuild, thus acquiescing in the termination of the lease and the responsibilities thereunder of Highland Realty, Inc. lessee, P-X as sublessee, and Pacific Gamble Rosinson, a Delaware corporation, the guarantor of the lease payments. This was an act of ownership with a knowledge of all conditions and circumstances.

The defendant asked the owner for, and received on February 10, 1961, an extension of time for the closing of the transaction from February 14 to March 1, 1961. Not until February 28, 1961, did the defendant indicate to the plaintiff that he did not intend to perform his contract.

We agree with the trial court that such conduct by the defendant, with full knowledge after January 17 of all the facts claimed to be concealed or misrepresented, constituted a waiver of any right to rescind the agreement of the parties as evidenced by the "EARNEST MONEY RECEIPT and AGREEMENT." *Tyree v. Stone* (1963), 62 Wn. (2d) 694, 384 P. (2d) 626; *Hoke v. Stevens-Norton, Inc., supra; Longenecker v. Brommer* (1962), 59 Wn. (2d) 552, 368 P. (2d) 900; *Fines v. West Side Implement Co.* (1960), 56 Wn. (2d) 304, 352 P. (2d) 1018; 5 Williston, Contracts (3d ed.) §§ 684, 687; 1 Restatement, Contracts § 298; 12 Am. Jur., Contracts §§ 354-356; 24 Am. Jur., Fraud and Deceit §§ 209-210. *Cf. Wickre v. Allen, supra; Lester v. Percy* (1961), 58 Wn. (2d) 501, 364 P. (2d) 423; *Vinneau v. Goede.* (1957), 50 Wn. (2d) 39, 309 P. (2d) 376.

The defendant also contends that the earnest money receipt was not sufficiently definite to be specifically enforced and, hence, a breach would not give the owner a cause of action for damages.

We have so frequently and so recently answered contentions similar to those urged by the defendant that further discussion seems unnecessary. See *White & Bollard, Inc. v. Goodenow* (1961), 58 Wn. (2d) 180, 361 P. (2d) 571, and *Hedges v. Hurd* (1955), 47 Wn. (2d) 683, 289 P. (2d) 706.

■ We agree with the trial court's conclusion of law, based on the foregoing cases, that the "Earnest Money Receipt and Agreement" contained all the essential elements of a simple, valid and binding contract for the sale of real estate for the breach of which an action for damages may be maintained, even if it were not sufficiently definite to warrant a decree of specific performance.

Defendant insists that a party-wall agreement constitutes an encumbrance sufficient to make the owner's title uninsurable and, therefore, the defendant is entitled to rescind the contract. This claim is clearly an afterthought and is without substantial merit.

The testimony is that the so-called party wall was not on the property contracted to be sold, but on adjoining property; that, instead of being an encumbrance, it was a wall-use agreement of potential benefit to the property being sold in that the owner of that property could use it if desired and there was no obligation to maintain and repair the wall unless and until the owner of that property chose to utilize it.

Based on the wall-use agreement, which is in the record, and the testimony before it, the trial court's finding of no encumbrance seems to us unassailable. *Hoke v. Stevens-Norton, Inc., supra; Thorndike v. Hesperian Orchards, Inc., supra.*

We come now to what seem to be the only assignments of error having substantial merit, *i.e.,* those directed to the trial court's refusal to give effect to the provision in the "Earnest Money Receipt and Agreement," providing that if

". . . [the] purchaser fails or refuses to complete purchase, the earnest money shall be forfeited as liquidated damages unless seller elects to enforce this agreement."

The owner did not elect to enforce the agreement, but sued to recover damages. The earnest money, as we have seen, was $25,000 ($1,000 in cash and a promissory note for $24,-000 due February 14, 1961).

The damages of $50,000, found by the trial court, rest on the basis that the owner has a piece of property which has a fair market value of $200,000 for which someone was willing to agree to pay $250,000. The reasoning is that the agreement to purchase being breached, the owner is entitled to the benefit of her bargain and the damage is the difference between the contract price and the fair market value of the property at the date of the breach, *i.e.*, $50,000.

The trial court refused to give effect to the liquidated damages provision in the "EARNEST MONEY RECEIPT and AGREEMENT" and made a finding prepared to conform to the wording of the Restatement,[2] which was that the amount of the earnest money

". . . was not a pre-estimate of damages made in advance of the breach . . . [and] was not intended . . . as a reasonable forecast of just compensation for the harm that could have been caused by the breach of said Agreement; . . ."

The finding is not supported by the evidence; on the contrary, it appears that the amount of the earnest money and the down payment were the principal subjects of discussion when the parties met to formalize their agreement in the "EARNEST MONEY RECEIPT and AGREEMENT." The attorney (for the owner) who prepared the "EARNEST MONEY RECEIPT and AGREEMENT," testified that the defendant did not want

---

[2]"§ 339. Liquidated Damages and Penalties.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." Restatement, Contracts § 339

to put up as much earnest money as the owner desired, but that he insisted that the earnest money be a substantial amount and commensurate with the magnitude of the transaction.

■ Although the wording of the Restatement would seem to make all provisions for liquidated damages suspect, the policy of the courts of this state is to uphold provisions for liquidated damages, unless it is shown that they are, in effect, a penalty. *Management, Inc. v. Schassberger* (1951), 39 Wn. (2d) 321, 235 P. (2d) 293; *Mead v. Anton* (1949), 33 Wn. (2d) 741, 207 P. (2d) 227, 10 A.L.R. (2d) 588.

There is no reason why persons, competent and free to contract, may not agree upon this subject (liquidated damages) as fully as upon any other, or why their agreement when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced. *Wise v. United States* (1919), 249 U. S. 361, 63 L. Ed. 647, 39 S. Ct. 303.

■ As we said in *Management, Inc. v. Schassberger, supra,* (p. 326):

"We are loathe to interfere with the rights of parties to contract as they please between themselves, and the fact that the parties to a contract call a sum stipulated to be paid in case of breach of the contract liquidated damages is a circumstance to be given serious consideration in determining whether it is in fact liquidated damages. . . ."

Concededly, the fact that the parties placed such a provision in their contract is not necessarily controlling or conclusive, but it is a circumstance to be given "serious consideration"; and we further pointed out in that case (*Management, Inc. v. Schassberger, supra*) that there is a notable trend away from what, at one time, seemed to be a disposition to look with disfavor upon provisions for stipulated damages.

We have here two contracting parties, both with extensive experience in real property transactions. The property involved is a nonperishable commodity, *i.e.*, real estate in a rapidly growing community, and is immediately available

for resale. The amount of the damages provided for in the contract for a breach is $25,000, or 10 per cent of the sale price or 12.5 per cent of the fair market value of the property as found by the trial court.

■ There is absolutely nothing in these circumstances or in the testimony to indicate that this is not "a reasonable forecast of just compensation for the harm that is caused by the breach." When it is further considered that the parties spent more time discussing the amount of the earnest money "than anything else," and that the attorney for the owner prepared the "EARNEST MONEY RECEIPT and AGREEMENT" and was responsible for the provision relative to liquidated damages, and that it is the owner who now seeks to have it disregarded, there would seem to be even less reason for the courts to rewrite the contract for the parties by eliminating the provision relative to liquidated damages.

If an agreement is vague[3] or ambiguous,[4] our cases hold that it should be construed most strongly against the party who prepared it, or whose attorney prepared it. The "EARNEST MONEY RECEIPT and AGREEMENT," with which we are concerned and which, as indicated, was prepared by the owner's attorney, is neither vague nor ambiguous. It gives alternative remedies to the "seller" (we have referred to her throughout the opinion as "owner"), if the purchaser refuses to complete the purchase, *i.e.*, she may elect specific performance or liquidated damages. Having sold the property for $225,000 to another purchaser, she waived the remedy of specific performance. She cannot now choose a third remedy of unliquidated damages which is not written into the agreement.

■ The contention, relative to the date from which interest is to run on the amount of the damages, is disposed

---

[3]*Sunset Oil Co. v. Vertner* (1949), 34 Wn. (2d) 268, 208 P. (2d) 906; *Willett v. Davis* (1948), 30 Wn. (2d) 622, 193 P. (2d) 321.

[4]*Wise v. Farden* (1958), 53 Wn. (2d) 162, 332 P. (2d) 454; *Fitzpatrick v. Bradshaw* (1933), 171 Wash. 335, 17 P. (2d) 894; *Clise Inv. Co. v. Stone* (1932), 168 Wash. 617, 13 P. (2d) 9; *Chermak v. P. J. Taggares, Inc.* (1931), 166 Wash. 67, 6 P. (2d) 380.

of by our determination that the damages are liquidated. It follows that interest will be computed from the date of the breach, *i.e.*, March 1, 1961. *Mall Tool Co. v. Far West Equip. Co.* (1954), 45 Wn. (2d) 158, 273 P. (2d) 652, while not directly in point, indicates that this is the correct result by its approval of the rule stated in McCormick on Damages § 54 (p. 213).

Finally, we have the contention that any judgment should be only against the defendant, Joseph P. Sterner individually, and not against the marital community. He does not urge that the earnest money payments (a check and a note) made by him were not community obligations, but that the community should not be liable in damages for the repudiation of the agreement to purchase because his wife could not be forced to execute the mortgage for $150,000 to secure the deferred payments since she did not sign the earnest money receipt.

Mrs. Sterner has filed no answer setting up such a defense, nor did she appear as a witness.

A husband has the authority to purchase real property with community personalty, over his spouse's objections, and can bind the community for the payment of the purchase price. *Baker v. Murrey* (1914), 78 Wash. 241, 138 Pac. 890. This is so because a husband has the sole management and control of community personal property. RCW 26.16.030. Mr. Sterner did bind the community by signing the earnest money receipt with or without his wife's consent. The damages for the breach of his agreement are a community liability.

The judgment of the trial court is affirmed in all respects except as to the amount of the judgment, and, for the reasons indicated, the owner-plaintiff is limited to the liquidated damages in accordance with her contract.

Both parties have prevailed in part on this appeal and shall bear their own costs.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.

January 28, 1964. Petition for rehearing denied.