[No. 3478–0–III.   Division Three.   July 17, 1980.]

NORTHWEST ACCEPTANCE CORPORATION, *Respondent,* v. HESCO CONSTRUCTION, INC., ET AL, *Appellants.*

· *Richard C. Agman* and *Edward J. Crowley,* for appellants.

*Larry Mundahl* and *Huppin, Ewing, Anderson & Hergert,* for respondent.

McInturff, J.—Hesco Construction, Inc., and Harold and Janet Schimmels appeal from a judgment in favor of Northwest Acceptance Corporation in an action to recover liquidated damages under a defaulted equipment lease.

In February 1974, Hesco Construction, Inc. (Hesco) leased a hydraulic backhoe from Andrews Equipment Service, Inc. (Andrews) for 4 years with an option to purchase the equipment at the expiration of the lease. The lease was signed for Hesco by its president, Harold E. Schimmels, who also executed a personal guaranty. Andrews assigned the lease to Northwest Acceptance Corporation (Northwest).

Hesco made payments on the lease until June 1975, when it encountered difficulties on a construction project in Oregon. In October 1975, Northwest declared Hesco in default and repossessed the equipment. In an action to recover liquidated damages under the defaulted equipment

lease, the court held Hesco and the Schimmels jointly and severally liable for $35,049.07 including interest and attorney's fees.

On appeal, Hesco argues the written contract was not a true lease but an agreement intended to create a security interest. *See* RCW 62A.1–201(37).[1] Applying Article 9 of the Uniform Commercial Code on secured transactions, Hesco argues its obligation under the alleged lease was discharged upon repossession of the equipment by Northwest. RCW 62A.9–502(2). Alternatively, Hesco argues the damages are to be determined by RCW 62A.9–504(1), not the contractual liquidated damages clause. In response, Northwest contends these issues are not properly before the court.

CR 8(c) requires affirmative defenses to be set forth in the answer.[2] In its answer, Hesco defended on the ground Northwest failed to give reasonable notice of an intended disposition of the repossessed equipment as required by RCW 62A.9–504(3).[3] On Northwest's motion

---

[1]RCW 62A.1–201(37):

"'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

[2]CR 8(c):

"In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, *release,* res judicata, statute of frauds, statute of limitations, *waiver,* and any other matter constituting an avoidance or affirmative defense." (Italics ours.)

[3]RCW 62A.9–504(3):

"Disposition of the collateral may be by public or private proceedings . . . but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized

for partial summary judgment, this affirmative defense was stricken by the court and the case proceeded to trial. Hesco now argues for the applicability of two different sections of the code, RCW 62A.9–505(2) on discharge, and RCW 62A.9–504(1) on damages. This court will not consider assignments of error raised for the first time on appeal, particularly when the issues sought to be raised are in the nature of affirmative defenses, the resolution of which requires a factual hearing. *Puget Sound Marina, Inc. v. Jorgensen*, 3 Wn. App. 476, 480, 475 P.2d 919 (1970).

Assuming that the lease was intended as security, the Article 9 code provisions were nevertheless displaced by the parties' written agreement.[4]

Under RCW 62A.9–505(2) upon written notice to the debtor after default, a secured party may propose to retain collateral in satisfaction of the obligation.[5] Here, Northwest made no such proposal for a "strict foreclosure." *See* J. White & R. Summers, *Uniform Commercial Code* § 26–8, at 977 (1972). On October 29, 1975, Hesco relinquished possession of the backhoe and signed a document entitled "Voluntary Surrender of Equipment" which stated, in part:

---

market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . ."

[4]Under RCW 62A.9–501(1):

"When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and *except as limited by subsection (3) those provided in the security agreement.* He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . *The rights and remedies referred to in this subsection are cumulative.*" (Italics ours.)

RCW 62A.9–501(3) refers to five subsections of Article 9 which limit the parties' freedom to contract on default, none of which are applicable here.

[5]RCW 62A.9–505(2):

"In any other case involving consumer goods or any other collateral a secured party in possession *may,* after default, *propose* to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and . . . to any other secured party . . ." (Italics ours.)

The undersigned being in default in the payment of rental payments owing to Northwest Acceptance Corporation (NAC) under a lease–commercial equipment (lease) dated February 20, 1974, covering the following described property . . . and recognizing that the right of NAC to possession of the equipment under the terms and conditions of the lease, *hereby voluntarily surrenders possession of the equipment to NAC and its assigns.*

*It is understood that by accepting possession of the equipment, NAC and its assigns do not waive the right to damages under the default damage formula.*

/s/ H. E. Schimmels, President[6]

(Italics ours.) Similarly, the liquidated damage clause displaces the applicability of RCW 62A.9–504(1)[7] regarding the disposition of proceeds on resale of the collateral.

Thus, even if Article 9 were controlling in this instance, the parties' agreement is still enforceable according to its terms, provided it is not otherwise unreasonable or unconscionable. This leads us to the primary issues on appeal, namely, whether the liquidated damage clause is an

---

[6]The terms of this document and the lease agreement also dispose of Hesco's argument that upon repossession, Northwest made an election of remedies precluding the recovery of damages. The default clause in the lease provided in part:

The lessee shall be in default under this agreement if lessee shall fail to perform the covenants and conditions herein contained or pay any part of the rental reserved, promptly when due . . . In the event that a default occurs, lessor declares lessee in default by reason of insecurity or lessee elects to reject this lease, lessor may take possession and hereby agrees to, pay to lessor the amount of damages computed as herein set forth . . .

[7]RCW 62A.9–504(1):

"A secured party after default may sell, lease or otherwise dispose of any or all of the collateral . . . Any sale of goods is subject to the Article on Sales (Article 2). The proceeds of disposition shall be applied in the order following to

"(a) the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

"(b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;

"(c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed."

unreasonable penalty or whether its enforcement would be unconscionable.

A liquidated damage clause must meet certain preconditions. The amount of damages stipulated must be a reasonable estimation of compensation for the damages caused by the contractual breach. The scope of the harm caused by the breach must be difficult of accurate estimation.

*Brower Co. v. Garrison,* 2 Wn. App. 424, 432, 468 P.2d 469 (1970); *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 326, 235 P.2d 293 (1951). Such clauses are favored by the courts and are rarely construed as a penalty.[8]

Under this contractual damage formulation, Hesco is basically liable for arrearages and future rental payments (discounted to the present value) subject to a credit for the depreciated value of the equipment at the time of default. The amount of credit is determined by a recognized accelerated depreciation method known as the "sum of the digits."[9]

---

[8]*Ashley v. Lance,* 80 Wn.2d 274, 280, 493 P.2d 1242, 62 A.L.R.3d 962 (1972); *Underwood v. Sterner,* 63 Wn.2d 360, 366, 387 P.2d 366 (1963); *Management, Inc. v. Schassberger, supra* at 326–28; *Rowland Constr. Co. v. Beall Pipe & Tank Corp.,* 14 Wn. App. 297, 311, 540 P.2d 912 (1975); *Brower Co. v. Garrison, supra* at 432.

[9]The default damage formula provides:
Lessor and lessee agree, for the purpose of this lease, that:
(A) The cost to the lessor of the equipment hereby leased was $55,544.50.
(B) The fair market value of the equipment hereby leased, at the end of the term of this lease shall be $8,331.67.
(C) At any time during the period of this lease, the present value of rent contracted to be paid in the future (said present value to be computed on the basis of a 5 per cent per annum yield) shall be computed as if the monthly rental was a monthly annuity for the number of future months the rent is promised to be paid.
(D) The total depreciation of the leased equipment during the term of the lease shall be the cost of the equipment to the lessor (Item 'A' above) less its residual value at the end of the lease (Item 'B' above).
(E) For the purpose of this section, the depreciated value of the leased equipment at any particular time during the term of this lease shall be the cost of the leased equipment to the lessor, as above set forth, less the depreciation thereon to such time computed on an accelerating depreciation basis, said computation to be made by dividing the term of the lease into semi-

Contrary to arguments by Hesco, the test of anticipated damages looks to the time of contracting. *Pettet v. Wonders*, 23 Wn. App. 795, 801, 599 P.2d 1297 (1979). There is

---

annual periods and spreading the total depreciation over such periods under the sum of the digits method. The sum of the digits computation shall be accomplished by numbering the last semi–annual period with the digit '1'; the next prior to the last period with the digit '2', and so on back, until the first semi–annual period is numbered, and then forming a fraction with a denominator equal to the sum of all the digits used and a numerator equal to the digit of the semi–annual period containing the day to which depreciation is being computed, plus the digits for all prior semi–annual periods. The fraction thus formed shall be used to multiply the total depreciation of the leased equipment during the term of the lease established in paragraph (D) above, and the result shall be the depreciation of the leased equipment to the day selected.

(F) In the event the lessee during the term of the lease elects to reject the lease or defaults in performance thereof and surrenders the leased equipment to the lessor or such equipment otherwise comes into the possession of the lessor, the damage to the lessor because of the lessee's default or breach of the lease exclusive of costs enumerated herein above shall be established as follows: The amount of all rent due and unpaid at the time of the computation of such damage shall be added to the present value of all rent contracted to be paid in the future (item C above) and the sum shall be Item 1 of this computation. If the equipment has been surrendered to the lessor or the lessor has otherwise come into the possession of it, there shall be subtracted from the depreciated value of the equipment at the time it came into the possession of the lessor (established pursuant to paragraph 'E' above), the residual value of the chattel at the end of the term of the lease (item 'B' above) and the difference which is Item 2 shall be subtracted from Item 1. The result, when added to the costs herein provided for, plus 5 per cent interest thereon from the date of computation to date of payment, or if judgment is entered for such damages, to date of judgment, shall be the amount of the damages suffered and costs expended by the lessor because of the lessee's breach of the lease. Interest after judgment shall be at the highest lawful rate permitted by law.

In the event the lessee during the term of the lease elects to reject it or defaults in performance thereof, but the leased equipment does not come into the possession of the lessor, the amount of damages suffered and costs expended by the lessor shall be Item 1 above plus the residual value of the chattels at the end of the term of the lease, which is item B above, plus interest at the rate of 5 per cent per annum from the date of computation to the date of payment, or if judgment is entered for such damages, to the date of judgment, plus the costs expended.

The damages are computed as follows:

1. The aggregate of rental payments in arrears ($6,640) is added to the present value of all future rentals contracted to be paid over the unexpired term of the lease ($34,090.64), which is discounted at the agreed rate of 5 percent, or $32,754.75, for a total of $39,394.75.

substantial evidence to support this finding by the trial court:

> The liquidated damages are reasonably related to antici-
> pation of possible problems with the leased equipment,
> the condition it would be in upon its return to the plain-
> tiff and the value of the lease agreement to the plaintiff if
> the defendants had fully performed said lease.

The hydraulic backhoe is a specialized piece of construc-
tion equipment, the marketability of which is dependent
upon many factors including a fluctuating economy, the
state of the construction industry, and the demand for used
equipment. Because this was a lease agreement, Hesco is
not entitled to a credit for the resale price of the equipment
following repossession. But, two features of this formula
make it a fair liquidated damages provision—(1) the les-
sor's expectation for future rentals under the lease was
reduced to the present value; and (2) the lessee was given a
credit for depreciation savings because the equipment was
returned to the lessor before the end of the lease. *See Siletz
Trucking Co. v. Alaska Int'l Trading Co.*, 467 F.2d 961, 963
(9th Cir. 1972) (interpreting an identical liquidated damage
clause).

There is no basis for a finding of unconscionability.[10] We
have here two contracting parties, both with extensive

---

2. That total is reduced by the difference between (a) the current depreciated value of the equipment at the time of repossession by the lessor ($21,169.59), and (b) the agreed fair market or residual value of the equipment upon its return at the end of the lease ($8,331.67), or $12,837.92. The total damages under this for-mula are $39,394.75 minus $12,837.92, or $26,556.83.

[10] The concept of unconscionability found in RCW 62A.2–302 has been applied to leases. *Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 47, 593 P.2d 1308 (1979).
those cases interpreting the doctrine appear to fall within two classifications: (1) substantive unconscionability; and (2) procedural unconscionability. Sub-stantive unconscionability involves those cases where a clause or term in the contract is alleged to be one–sided or overly harsh, while procedural uncon-scionability relates to impropriety during the process of forming a contract. *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 259–60, 544 P.2d 20 (1975), citing J. White & R. Summers, *Uniform Commercial Code* § 4–2, at 117 (1972).

experience in construction equipment. Contrary to assertions by Hesco, the damage formula is not impossible to understand.[11] Mr. Schimmels complains that Northwest did not volunteer an explanation of the formula, but he also admitted that he never bothered to read the contract, and did not ask for an explanation. His son, who was serving as Hesco's secretary–treasurer at the time, is a certified public accountant. Given these circumstances, the trial court properly refused to find the lease unconscionable.

> There is no reason why persons, competent and free to contract, may not agree upon this subject (liquidated damages) as fully as upon any other, or why their agreement when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced.

*Underwood v. Sterner,* 63 Wn.2d 360, 366, 387 P.2d 366 (1963), citing *Wise v. United States,* 249 U.S. 361, 63 L. Ed. 647, 39 S. Ct. 303 (1919).

We do agree, however, that Hesco should not be responsible for personal property taxes and insurance costs which were incurred several months after repossession. Under the terms of the lease, Hesco was liable for the costs incident to repossession. Northwest declared the lease in default and repossessed the equipment in October 1975. After holding the backhoe for sale for 3 months, Northwest purchased it at a public sale in January 1976. According to Northwest's business records, the personal property taxes were paid in May 1977. No date was indicated for the payment of insurance. Thus, these costs appear to be beyond those contemplated by the lease agreement.

The lease agreement also provided for the payment of attorney's fees and we find no abuse of discretion in the award by the trial court. Attorney's fees on appeal pursuant to RAP 18.1 are awarded in the amount of $887.50.

Judgment of the Superior Court is affirmed with the exception of the award of personal property taxes and

---

[11]See footnote 9.

insurance; however, we remand the case to the trial court because we have discovered what appears to be a mathematical error in the damage computation stemming from an incorrect reporting of the cost of the machine at the beginning of the lease. (See Exhibits 1 and 4.) The default damage formula in the lease (Exhibit 1) states the cost to the lessor was $55,544.50, but in Exhibit 4 the cost was computed on the basis of $54,544.50. The court should correct this $1,000 discrepancy.

GREEN, C.J., and ROE, J., concur.