**In re Bruce F. DAILEY, and Michaele P. Dailey, d/b/a Creekside Inn, Executive Motor Inn, South Center, Debtors.**

**Bankruptcy No. 90–30508–11.**

United States Bankruptcy Court,
D. Montana.

June 14, 1994.

James C. Bartlett, Hash, O'Brien & Bartlett, Kalispell, MT, for debtors.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

This matter is before the Court on remand from the Ninth Circuit Court of Appeals directing the Bankruptcy Court to determine the damages of Mercedes–Benz Credit Corp. ("MBCC") due to rejection of an unexpired lease "under the terms of the lease's liquidated damages clause as interpreted by Washington law." The Ninth Circuit held:

> The lease was merely breached, not rescinded or declared void *ab initio,* and there is nothing in 11 U.S.C. §§ 365(g) or 502(g) that prohibits a court from examining the terms of the parties' agreement to determine the amount of damages due the nonbreaching party or the law applicable thereto. As there is nothing in the lease's formula for calculating damages that runs afoul of the Bankruptcy Code, and there was nothing improper in the parties' selection of Washington law, we hold the bankruptcy court erred by ignoring the lease's damage calculation formula and choice of law provision.

*In re Dailey,* BAP No. MT–91–2248–ORJ, p. 4, 1994 WL 55518 (2/24/94).

In accordance with such mandate, the Court held a hearing on June 6, 1994, with counsel for the respective parties present. Both parties re-offered the evidence submitted on October 2, 1991. The Debtor filed in support of Debtor's position the brief filed on appeal with the Ninth Circuit Court of Appeals. However, that brief containing the Debtor's contentions was found to have no merit by the Circuit Court. Accordingly, this Court will only examine the evidence and

exhibits to determine if the alleged damages under the liquidation clause are consistent with Washington law. MBCC and the Debtor have submitted memoranda which set forth case authority on liquidated damage clauses under Washington law.

Both parties cite *Walter Implement, Inc. v. Focht,* 107 Wash.2d 553, 730 P.2d 1340, 1343 (1987) which states:

> True liquidated damages clauses, those that are not penalties, are favored and will be upheld. *Ashley v. Lance,* 80 Wash.2d 274, 280, 493 P.2d 1242 (1972); *Jenson v. Richens,* 74 Wash.2d 41, 47, 442 P.2d 636 (1968); *Management, Inc. v. Schassberger,* 39 Wash.2d 321, 326, 235 P.2d 293 (1951). This court follows the United States Supreme Court view that liquidated damages agreements fairly and understandingly entered into by experienced, equal parties with a view to just compensation for the anticipated loss should be enforced. *Wise v. United States,* 249 U.S. 361, 39 S.Ct. 303, 63 L.Ed. 647 (1919); *Northwest Collectors, Inc. v. Enders,* 74 Wash.2d 585, 594, 446 P.2d 200 (1968); *Underwood v. Sterner,* 63 Wash.2d 360, 366, 387 P.2d 366 (1963); *Schassberger,* 39 Wash.2d at 327, 235 P.2d 293. The fact that the contracting parties designate a sum as liquidated damages is a circumstance given serious consideration, but it is not necessarily controlling or conclusive. *Underwood,* 63 Wash.2d at 366, 387 P.2d 366; *Schassberger,* 39 Wash.2d at 326, 235 P.2d 293. The designation in this contract that the additional amount is not a penalty but is liquidated damages, therefore, does not decide the issue. Courts will look to the intention of the parties to make an accurate assessment of the clause's purpose. *Underwood,* 63 Wash.2d at 366, 387 P.2d 366; *Schassberger,* 39 Wash.2d at 326–27, 235 P.2d 293. "A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty." *Enders,* 74 Wash.2d at 594, 446 P.2d 200.
>
> This court has adopted and applied a 2-part test to determine whether a liquidated damages clause is enforceable. First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very difficult of ascertainment. *Schassberger,* 39 Wash.2d at 327–28, 235 P.2d 293; *Knight, Vale & Gregory v. McDaniel,* 37 Wash.App. 366, 371, 680 P.2d 448 (1984); *Northwest Acceptance Corp. v. Hesco Constr.,* 26 Wash.App. 823, 828, 614 P.2d 1302 (1980). Reasonableness of the forecast will be judged as of the time the contract was entered. *Northwest Acceptance,* at 829, 614 P.2d 1302. Determination of whether the test is met depends upon the facts and circumstances of each case. *Schassberger,* 39 Wash.2d at 329, 235 P.2d 293; *Northwest Acceptance,* 26 Wash.App. at 829, 614 P.2d 1302; *Pettet v. Wonders,* 23 Wash.App. 795, 801, 599 P.2d 1297 (1979).

Proceeding with the two-part test, *Walter Implement, Inc.,* holds unenforceable a liquidated damages clause because the formula for calculating the amount of the liquidated damages did not appear to have any relationship to anticipated actual damages and that the damages were not difficult to calculate. The damage clause involved in *Walter Implement* contained a provision for the "sum of all rentals called for by the lease plus an amount equal to twenty (20) percent of the aggregate minimum rental charges for the unexpired portion of the term of this agreement, not as a penalty, but as and for liquidated damages, less (b) the sum of all rent paid and net proceeds of sale." The court noted:

> A fixed amount of 20 percent of the full lease figure may be a reasonable forecast. In fact, the parties orally agreed that if Focht wished to buy the equipment at the end of the lease term, the cost would be 20 percent of the entire figure.

*Id.,* 730 P.2d at 1344.

But the Washington Supreme Court concluded that when the lease was breached in the first year, the liquidated damages could vary from $2,161.26 (default in the 4th year) to $8,645.06 (default in the first year) and "[N]o reasoning has been offered explaining how the variation reflects a reasonable forecast of the harm that is caused by the breach." *Id.* at 1344. The court further concluded the 20 percent provision bore no relation to the actual damage, which was

capable of actual calculation, so that clause was a "penalty". *Id.*

In a subsequent case, a lower Washington court held a penalty clause providing for retention of $250,000 was unenforceable as violating the *Walter Implement* tests. *Lind Bldg. Corp. v. Pacific Bellevue Dev.*, 55 Wash.App. 70, 776 P.2d 977, 982–983, *review denied*, 113 Wash.2d 1021, 781 P.2d 1322 (1989). The court found the contract forfeiture clause bore no reasonable forecast of anticipated damages, there was no actual loss, and the party's actual loss was capable of proof. *Lind*, 776 P.2d at 982–83.

*Lind* states the *Walter Implement* tests were derived from Restatement (Second) of Contracts § 356 (1981), which was redrafted to harmonize with § 2–718(1) of the Uniform Commercial Code. (RCW 62A.2—718). 776 P.2d at 980. Section 356 was former § 339, cited in *Management, Inc. v. Schassberger, supra*, 235 P.2d at 297. While neither counsel have discussed the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1667—1667(e), the case of *Kedziora v. Citicorp Nat. Services, Inc.*, 780 F.Supp. 516 (N.D.Ill.1991); 844 F.Supp. 1289, 1295 (1994) is an application of the TILA to an automobile lease which bears the same features as the MBCC lease. The case is instructive, if not dispositive under *Washington* law, because—

> Congress here very nearly copied the exact language of the Uniform Commercial Code and the Restatement (Second) of Contracts (1981) on liquidated damages (see Ill.Rev.Stat. ch. 26; § 2–718(1); Restatement § 356(1).

> \* \* \* \* \* \*

> By logical extension, then, Congress must have intended that any settled judicial interpretation of the UCC and the Restatement should govern the interpretation of Section 1667(b)(6) [of the TILA].

*Kedziora*, 780 F.Supp. at 519.

As to the issue addressed in this order below, the court in *Kedziora* states:

> Discounting to present value is widely recognized as an essential element of enforceable liquidated damages provisions in general (see, e.g., this Court's opinion in *Heller Financial, Inc. v. Burry*, 633 F.Supp. 706, 707 (N.D.Ill.1986); *United Leasing & Financial Services, Inc. v. R.F. Optical,*

*Inc.*, 103 Wis.2d 488, 309 N.W.2d 23, 27 (Wis.App.1981)) and in the context of accelerated auto lease payments in particular (*Moore v. Ford Motor Credit Co.*, 778 S.W.2d 657, 659 (Ky.App.1989); *Adams v. D & D Leasing Co. of Georgia*, 191 Ga. App. 121, 381 S.E.2d 94, 96 (1989)). Lease provisions that require acceleration without reduction to present value invariably shift the time value of future payments from lessee to lessor. And any formula that is *guaranteed* to produce greater than actual damages necessarily results in an unenforceable penalty rather than a valid assessment of liquidated damages (*Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir.1985).

*Id.* at 521.

After holding that a residual value clause is "a reasonable means of compensating Citicorp for the defeat of its basic expectation that the lessee will fulfill the entire Lease," 780 F.Supp, at 528, the court, in a later decision denying summary judgment, held—

> "Hence all that Citicorp has done that appears potentially vulnerable under the Act relates to the second component—to its having collected the entire residual value of $6,362 [set forth in the lease], rather than only the somewhat lower present value of that amount."

844 F.Supp. at 1295.

In the present case, the liquidated damage clause provides:

> . If I default in the payment of any installment of monthly rent, or any other sums payable hereunder by me, or if I fail to comply with any other of the terms, covenants or conditions of this lease agreement to be kept or performed by me, or if I am adjudicated a bankrupt, or if I or my creditors file for relief under any bankruptcy or similar laws for the relief of debtors, or if I make any assignment for the benefit of creditors or assign, transfer, or encumber my interest under this lease in a manner not permitted by the terms of this lease agreement, or if a receiver be appointed for any of my assets, or if you in good faith believe the prospect of payment of performance by me is impaired, then in any such event you, at your sole option, may declare this lease in default. I agree

that upon my default I shall be liable for, and shall pay to you upon demand made by you, as liquidated damages the sum of the following: i) any lease payments or other amounts due and owing under the lease at the time of default; plus ii) the balance of the lease payments which I would have made had the lease gone to term, less a deduction for the time-value of such payments computed in accordance with the Rule of 78's; plus iii) the Estimated End of Term Residual Value (Item 2E); plus iv) an amount equal to one monthly lease payment; plus v) any an all commissions, fees or other amounts paid by Mercedes–Benz Credit Corporation as consideration for the assignment of the lease.

In the event of my default, I agree that I will surrender the vehicle to you or that you or your agents may take possession of the vehicle wherever it may be found, whether on my premises or elsewhere, I further agree that any right I may have to or in the vehicle or the lease shall terminate upon my default.

If you obtain possession of the vehicle following my default, you may, but are not obligated to, dispose of the vehicle by public or private sale or lease, in the wholesale or retail market, and I understand that such disposition may be made with or without notice to me. You may, but shall not be obligated to, deduct from my total default liability any proceeds obtained upon disposition of the vehicle less any expenses or costs incurred by you in connection with the repossession, storage, restoration and disposition of the vehicle.

I expressly agree that you may assess, and I will be liable for, interest on the total amounts I may owe you from time to time by reason of my default at the rate of twelve percent (12%) per annum both before and after judgment, to the extent permitted by law. I also agree to be liable for collection or legal costs incurred by you, including reasonable attorney's fees and court costs, not to exceed twenty-five percent (25%) of my unpaid debt after default.

I understand that the remedies provided under this lease in favor of you upon my default shall not be deemed to be exclusive, but shall be cumulative and in addition to any other remedies in your favor, whether existing in law, equity or bankruptcy.

The lease provides for 60 monthly payments of $1,116.52 per month, totaling $66,991.20. A "Capitalized Cost Reduction" of $3,256.36 was paid upon execution of the lease. The lease further states that the "Estimated End of Term Residual Value" (based in part on an average of 15,000 miles annually) was "$33,885.00".

The creditor's evidence seeks damages of $24,209.67, based on calculations following the liquidated damages clause as follows:

| | | | |
|---|---|---|---|
| I. | Past due lease payments | — | $ 5,582.60 |
| | Late charge | | 250.00 |
| II. | Scheduled Remaining Payments | — | 30,146.04 |
| | Less time value discount | | 5,955.58 |
| III. | End-of-Term Residual Balance | — | 33,885.00 |
| IV. | One monthly lease payment | — | 1,116.52 |
| V. | Assignment Fee | — | $ 847.13 |
| | TOTAL | | $65,871.71 |

| | | | |
|---|---|---|---|
| Less: | A. Sales Proceeds | | $46,500.00 |
| Minus: | Repossession expense | — | 75.07 |
| | Restoration | | 95.00 |
| | Selling expense | | 350.00 |
| | Transportation | | 385.00 |
| | KSR | | 5.00 |
| | TOTAL DEDUCTION: | | $45,590.00 |
| Plus: | Attorney's fees (through 6/30/90) | | 3,927.96 |
| | TOTAL NET CLAIM | | $24,209.67 |

When repossessed and sold, the auto had an odometer reading of 14,587 miles and was in good to excellent condition.

In examining the damage calculations based upon the liquidation damage clause, I conclude only two provisions of the calculation are suspect as penalty, rather than actual loss. The first is the end-of-term residual value, at $33,885, and the second is an additional monthly payment of $1,116.52. In accordance with *Kedziora,* the residual value is a reasonable forecast of expected damages, but should have been discounted to present value. 780 F.Supp. at 527–528; 844 F.Supp. at 1295.

The damage clause provides for an additional monthly payment of $1,116.52. There is nothing in this record which shows why that additional sum is due for actual damages, especially when all future lease payments are paid in full, discounted to present value. I conclude this sum of $1,116.52 as an additional rent payment is really penalty for the breach, bearing no reasonable relation to actual damages.

Based on *Walter Implement* tests, and *Kedziora, supra,* the actual damages of MBCC were capable of calculation. The actual purchase price of the auto on August 17, 1987, was $75,300 (Ex. D). That purchase price was financed through the lease—purchase agreement, dated August 17, 1987 (Ex. 2). The Debtor went into default. MBCC was then entitled, under the liquidation damage clause and Washington law, to its actual damages. Those actual damages are as follows:

| | | |
|---|---|---:|
| 1. | Past-due lease payments— | $ 5,582.60 |
| 2. | Late charges | 250.00 |
| 3. | Present value of remaining lease payments | 24,190.00 |
| 4. | Assignment fee | $ 847.13 |

| | |
|---|---:|
| TOTAL LEASE PAYMENTS AND CHARGES | $30,869.73 |

The liquidated damage clause provided also for payment of the "End–Of–Term Residual Balance" of $33,885.00. This figure represents the amount of the purchase price due MBCC if the Debtor elected to purchase the vehicle in July, 1992. It is a reasonable forecast of just compensation lost to MBCC by reason of the Debtor's default. However, in the Proof of Claim, MBCC calculated the entire sum due as of the date of the end of the term, when in fact, it sold the vehicle in July 1990, with two years yet due on the lease. MBCC did not discount the residual value to present value. Using a 12% annual interest rate, which is the default rate in the lease, the discount percentage is 21.24338%. Am.Jur.2d *Desk Book,* (1979) Item No. 128, Compound Interest and Annuity Tables (Present Worth of a series of payments tomorrow), p. 439. The discounted value of $33,885 is thus reduced by $7,198.32 to $26,686. In summary, the actual damage amount is calculated as follows:

| | | |
|---|---|---:|
| 1. | Total lease payments and fees (discounted to present value) | — $30,869.73 |
| 2. | Total residual value loss (discounted to present value) | — 26,686.00 |
| 3. | Attorneys fees cost per lease | $ 3,927.96 |
| | TOTAL PRESENT VALUE OF ACTUAL DAMAGE | $61,483.69 |
| | Less net sales price received | — $45,590.00 |

| | |
|---|---:|
| TOTAL ACTUAL DAMAGES | $15,893.69 |

The balance of the claim is pure penalty under the holdings of *Walter Implement, supra,* and *Kedziora, supra.*

IT IS ORDERED the objection of the Debtor to the Proof of Claim of Mercedes–Benz Credit Corporation is sustained in part and the claim is allowed as a general, unsecured claim in the sum of $15,893.69.