[No. 22002–1–I.   Division One.   July 31, 1989.]

LIND BUILDING CORPORATION, *Appellant,* v. PACIFIC
BELLEVUE DEVELOPMENTS, *Respondent.*

*W.K. McInerney, Jr.,* for appellant.

*Evan E. Inslee,* for respondent.

SCHOLFIELD, J.—Lind Building Corporation (Lind), appeals a trial court judgment concluding that Pacific Bellevue Developments (PBD) was entitled to retain as liquidated damages $250,000 which Lind had deposited pursuant to an agreement to purchase real estate. The trial court also awarded attorney's fees to PBD. We reverse.

### STATEMENT OF FACTS

PBD owned a tract of real property in the city of Bellevue, and on September 8, 1983, entered into a contract to sell it to Lind for a purchase price of $4,144,085. Lind paid $20,000 as an initial deposit on the date of execution of the agreement.

The agreement provided:

> If Purchaser defaults, Seller shall have the right to receive the Deposit from escrow and retain it as liquidated damages, in which event this Agreement shall be terminated.

Exhibit 10.

Paragraph 2 of exhibit B to the Real Estate Purchase and Sale Agreement provided that upon removal of two specific contingencies, Lind would make an additional deposit of $50,000. This deposit was made. Previously, Lind had exercised its right to extend the contingency period 30 days by paying an additional $20,000 deposit. Following payment of these three deposits, the closing of the transaction was to occur on January 15, 1984. Prior to that date, Lind advised PBD that it had not obtained necessary financing and requested an extension to February 6, 1984. PBD agreed. A first amendment to the agreement was prepared which required Lind to pay an additional $20,000 as consideration for the extension.

The transaction did not close on February 6, 1984, and at Lind's request, PBD agreed to extend the closing until May 6, 1984, provided Lind made additional extension payments as follows:

$10,000 upon execution of a second amendment which would extend the closing;

$30,000 on February 20, 1984;

$100,000 on March 6, 1984; and

$500,000 on May 6, 1984.

Lind made all of the required extension payments except the final $500,000, which was to have been paid on closing. The total sum of deposits and extension payments by Lind was in the amount of $250,000.

The transaction did not close on May 6, 1984. PBD refused Lind's request to further extend the closing and informed Lind that it had forfeited the $250,000 previously deposited.

On June 5, 1984, PBD entered into a contract to sell the property to Turner for $5,150,000, all cash upon closing. The Turner transaction was closed in September 1984, and PBD received all of its consideration within 60 days of the closing date.

Lind filed a lawsuit in King County Superior Court on May 30, 1984, seeking return of the $250,000 in deposits and payments paid on the transaction. Lind also sought other relief, which was either abandoned or denied. The trial court ruled that the liquidated damages clause in the Real Estate Purchase and Sale Agreement was an enforceable clause and did not constitute a penalty. The trial court also awarded PBD reasonable attorney's fees and costs in the sum of $31,031.05. The primary issue on this appeal is whether or not PBD is entitled to retain the $250,000 as liquidated damages.

### ENFORCEABILITY OF LIQUIDATED DAMAGES CLAUSE

Lind contends that the liquidated damages clause imposes a penalty and is unenforceable in this case because PBD suffered no actual damages as a result of Lind's default.

In addressing this issue, we must first identify the controlling rule of law. Washington courts have generally looked with favor upon liquidated damages clauses and upheld them where the sums involved did not amount to a penalty. *Walter Implement, Inc. v. Focht,* 107 Wn.2d 553, 730 P.2d 1340 (1987).

A clear expression of this view is found in *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 326–27, 235 P.2d 293 (1951):

> We are loathe to interfere with the rights of parties to contract as they please between themselves, and the fact that the parties to a contract call a sum stipulated to be paid in case of breach of the contract liquidated damages is a circumstance to be given serious consideration in determining whether it is in fact liquidated damages. However, the fact that the parties have so designated the sum to be paid is not necessarily controlling or conclusive. Courts looking to the intent of the parties have not hesitated to hold that express stipulations for liquidated damages were really stipulations for penalties, and vice versa.

In *Management, Inc.,* an unlawful competition case, the court adopted Restatement of Contracts § 339 (1932) as the applicable rule.[1] In *Lee v. Bergesen,* 58 Wn.2d 462, 364

---

[1] Restatement of Contracts § 339 (1932) reads in part as follows:
"LIQUIDATED DAMAGES AND PENALTIES.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

  "(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

  "(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

P.2d 18 (1961), the court again cited and relied upon Restatement of Contracts § 339 (1932). *See also Knight, Vale & Gregory v. McDaniel,* 37 Wn. App. 366, 371, 680 P.2d 448, *review denied,* 101 Wn.2d 1025 (1984).

In 1979, the Restatement rule was redrafted to harmonize with § 2–718(1) of the Uniform Commercial Code.[2] *Illingworth v. Bushong,* 297 Or. 675, 688 P.2d 379 (1984). The revised rule is found in Restatement (Second) of Contracts § 356 (1981), and reads as follows:

> (1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

In *Walter Implement,* at 559, our court stated the rule as follows:

> This court has adopted and applied a 2–part test to determine whether a liquidated damages clause is enforceable. First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very difficult of ascertainment.

The *Walter Implement* opinion does not cite § 356 of the Restatement, but its statement of the rule is generally consistent with the Restatement rule. Since the court cited some of its earlier cases relying upon the former Restatement rule, we assume the court intended to apply a rule consistent with the principles adopted in the Restatement § 356.

In *Management, Inc.,* the court cited at page 326 a statement of the distinction between liquidated damages

---

[2]RCW 62A.2–718 provides in part as follows:

"**Liquidation or limitation of damages; deposits.** (1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

and a penalty from 15 Am. Jur. *Damages* § 241, at 672 (1938) as follows:

> "As distinguished from liquidated damages, a penalty is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. It is the payment of a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as in terrorem of the offending party, while the essence of liquidated damages is a genuine covenanted pre–estimate of damages."

Underlying the Restatement rule is the principle that damages awarded for breach of contract should be reasonably compensatory rather than punitive. Comment *a* to the Restatement (Second) of Contracts § 356 (1981) reads in part as follows:

> However, the parties to a contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy.

The principle that damages should be compensatory only is violated if substantial sums are recovered as liquidated damages in cases where there is no actual damage or loss as a consequence of the breach.

Comment *b* to the Restatement (Second) of Contracts § 356 (1981) adopts this view, stating in part as follows:

> If the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation. *If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable.*

(Italics ours.) The Washington cases are in accord.

In *Mead v. Anton,* 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R.2d 588 (1949), in upholding a liquidated damages clause in an unfair competition case, the court commented at pages 761–62:

Of course, if the amount agreed upon is so large as to bear no reasonable relation to damages actually suffered, courts will not hesitate to declare that the amount is a penalty and not liquidated damages, but no such situation is here presented.

PBD argues that *Mead* is a case holding that liquidated damages clauses will be enforced in Washington whether or not actual damages are sustained. The *Mead* opinion does not go that far. The issue of what damages, if any, were suffered by plaintiffs from defendants' breach is never decided. The *Mead* court was obviously impressed with the difficulty involved if plaintiffs were compelled to prove actual damages.[3] The court also made it clear that if there was "no reasonable relation to damages actually suffered", a provision for liquidated damages would amount to a penalty. *Mead,* at 761.

Thus, the *Mead* court left the door open for a court to find a penalty where there is no actual loss and the amount in issue is substantial. We read *Mead* as supporting the result we reach in this case, which we believe is in accord with current trends in this area.

> The traditional view called for testing the reasonableness of the liquidated damages clause as of the time the contract was formed. Courts have often felt uncomfortable with this approach in cases in which the property's market value has risen sharply after contracting and before breach, so that the seller has little actual damages or none at all; an estimate of damages which was reasonable when made may sometimes turn out to be a gross exaggeration. More recent cases display a willingness to take this factor into account, and to refuse enforcement of the forfeiture if it would result in a large windfall to the vendor in fact.

R. Cunningham, W. Stoebuck & D. Whitman, *Property* 650–51 (1984).

---

[3]*Mead* stands as authority that it is not necessary to prove actual damages in order to be entitled to recover liquidated damages in cases where actual damages are difficult of ascertainment and proof and the amount of liquidated damages is reasonable.

In *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 446 P.2d 200 (1968), the court declined to enforce a liquidated damages clause, stating the principle at page 594 that:

> A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty.

R. Cunningham, W. Stoebuck & D. Whitman, 650–51 (1984).

In *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 446 P.2d 200 (1968), the court declined to enforce a liquidated damages clause, stating the principle at page 594 that:

> A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty.

In *Walter Implement, Inc.,* the court held unenforceable a liquidated damages clause on the grounds that the formula for calculating the amount of the liquidated damages did not appear to have any relationship to anticipated actual damages and that the damages were not difficult to ascertain. In so holding, the *Walter Implement* court cited with approval *American Fin. Leasing & Servs. Co. v. Miller,* 41 Ohio App. 2d 69, 322 N.E.2d 149 (1974), in which the Ohio court stated at page 75:

> Such amount is patently in excess of the actual damage which could be suffered by the lessor, and therefore must be considered as a "penalty" rather than a stipulated "liquidated damage."

There are three reasons the liquidated damages clause in this case is unenforceable. The amount of $250,000 came into existence for reasons unrelated to a provision calling for liquidated damages and, therefore, does not represent an effort by the parties to make a reasonable forecast of anticipated damages. The second reason is that, there being no actual substantial damages, the requirement of the rule that the amount of liquidated damages be reasonable in the light of the anticipated or actual loss cannot be satisfied. Thirdly, calculation of the amounts PBD claims represent

losses due to Lind's default are not difficult of ascertainment or proof.

### REQUIREMENT OF A REASONABLE FORECAST OF FUTURE DAMAGES

■ A valid liquidated damages clause requires the contracting parties to make an estimate of the just compensation for the damages to be anticipated from a breach. *Walter Implement, Inc. v. Focht, supra; Northwest Collectors, Inc. v. Enders, supra.*

In *Norwalk Door Closer Co. v. Eagle Lock & Screw Co.,* 153 Conn. 681, 689, 220 A.2d 263, 268 (1966), the Supreme Court of Connecticut required the parties to "estimate in advance the reasonably probable foreseeable damages which would arise in the event of a default."

Undisputed facts in this case show that at the time of contracting, the liquidated damages clause applied only to the initial deposit of $20,000. While the contract contemplated the possibility of additional deposits, those totaled only an additional $70,000. At the most, the deposits that conceivably could have been contemplated by the parties at time of contracting totaled $90,000. All of the additional deposits over $90,000 were pursuant to additional agreements negotiated by the parties after the signing of the original contract. These subsequent agreements called for additional deposits by Lind in consideration of being granted extensions of time on the closing date. They had no apparent relationship to liquidated damages, and there is no evidence that any of the deposits after the first $20,000 were calculated in an effort to make a reasonable estimate of anticipated damages.

Assuming arguendo that $20,000 represented an effort to forecast damages, there is nothing in the record explaining how the estimate of liquidated damages grew from $20,000 to $250,000. For this reason alone, the liquidated damages clause in this case must be held invalid and unenforceable.

### EFFECT OF NO ACTUAL LOSS

■ While there is some authority that an otherwise valid liquidated damages clause is enforceable even if there

are no actual damages, the weight of authority and the better–reasoned cases hold that where there is no actual loss, an otherwise enforceable liquidated damages clause is not enforceable because to do so would violate the principle that damages should be compensatory only. As previously indicated, however, it is not always necessary to prove actual damages in order to recover liquidated damages in Washington.

Adhering to this principle, the Supreme Court of Connecticut stated in *Norwalk,* at 689–90:

> It is not the function of the court to determine by hindsight the reasonableness of the expectation of the parties at the time the contract was made, but it is the function of the court at the time of enforcement to do justice. In the ordinary contract action the court determines the just damages from evidence offered. In a valid contract for liquidated damages, the parties are permitted, in order to avoid the uncertainties and time–consuming effort involved, to estimate in advance the reasonably probable foreseeable damages which would arise in the event of a default. Implicit in the transaction is the premise that the sum agreed upon will be within the fair range of those just damages which would be called for and provable had the parties resorted to proof. Consequently, if the damage envisioned by the parties never occurs, the whole premise for their agreed estimate vanishes, and, even if the contract was to be construed as one for liquidated damages rather than one for a penalty, neither justice nor the intent of the parties is served by enforcement. To enforce it would amount in reality to the infliction of a penalty.

It is a well–accepted principle of contract law that the purpose of awarding damages for breach of contract is to place the damaged party, as nearly as possible, in the position he would be in had the contract been performed. He is not entitled to more than he would have received had the contract been performed. *Platts v. Arney,* 50 Wn.2d 42, 46, 309 P.2d 372 (1957).

Comment *b* to Restatement (Second) of Contracts § 356 (1981) makes it clear that a provision allowing substantial damages when the actual loss is minimal or nonexistent amounts to a penalty and is unenforceable.

To allow recovery of substantial damages where there is no actual loss is irreconcilable with the principle stated and

applied in *Northwest Collectors, Inc. v. Enders, supra* at 594:

> A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty.

*Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co.,* 649 F. Supp. 1310 (D. Nev. 1986), *aff'd,* 844 F.2d 792 (9th Cir. 1988), is a well–reasoned case, holding that a liquidated damages provision constituted an unenforceable penalty where the nonbreaching party actually benefited from the breach. The court applied Nevada law, consisting of Restatement (Second) of Contracts § 356 (1981) and the same rule as we have in Washington that if the liquidated damages sought bear no reasonable relation to the actual damages, the provision for liquidated damages will be construed as providing an unenforceable penalty.

The court then held that even though the $22,000 liquidated damages was a reasonable forecast and that the damages were difficult of ascertainment and proof, where there was no actual loss the agreed liquidated damages are so disproportionate to the actual damages that the clause provides for a penalty and is unenforceable.

It is illogical to allow a party to recover damages greatly exceeding the actual loss simply because of the existence of a liquidated damages clause. In all other contract actions, the remedy is limited to reasonable compensation for a proven loss.

Finding of fact 34 entered by the trial court, which is unchallenged by either party to this appeal, reads as follows:

> Subsequent to May 24, defendant did resell the property to a third party for $5,150,000 cash. Defendant made very little net profit on the resale, even after crediting the amounts forfeited by plaintiff in favor of defendant. The net return on investment to defendant, based on the resale, was less than 2% per year.

Since it is an established fact that the property was sold to a third party for approximately $1 million more than the price Lind was obligated to pay, if there was any loss to PBD caused by Lind's default, it was minimal and bears no reasonable relation to the sum of $250,000. Under these

circumstances, allowing PBD to retain the $250,000 in deposits amounts to the imposition of a penalty and must be reversed.

### ALLEGED LOSSES NOT DIFFICULT TO PROVE

In its brief, PBD emphasizes that finance charges for holding the property in an undeveloped condition amounted to approximately $1,429 per day. On that basis, the damages can be calculated by multiplying by the number of days the property was off the market due to Lind's default. PBD also mentioned a percentage of office overhead and real estate taxes. These expenses are also readily ascertainable and provable. The facts of this case simply do not satisfy the requirement of Restatement § 356 that the loss be difficult to prove.

### PREJUDGMENT INTEREST

Lind also claims entitlement to prejudgment interest on the $250,000. The record before us does not reflect the date or dates when the funds came into the possession or control of PBD. Finding of fact 12 states that PBD "obtained said $250,000 and at all times has retained the same as liquidated damages."

*Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968) stated the rule at page 32:

> [I]nterest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

This rule is cited with approval in the recent case of *Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986).

Because the $250,000 involved in this case is a fixed amount, it follows that Lind is entitled to prejudgment interest. This issue is remanded to the trial court for a determination of the amount of prejudgment interest to be allowed.

### ATTORNEY'S FEES

Paragraph 15 of the Real Estate Purchase and Sale Agreement provides as follows:

If Purchaser, Seller, or Agent brings suit to enforce or declare the meaning of any provision of this Agreement, the prevailing party, in addition to any other relief, shall be entitled to recover reasonable attorney's fees and costs, including any on appeal.

Exhibit 10.

Pursuant to the provisions of this paragraph, the trial court allowed PBD judgment against Lind for recovery of attorney's fees and costs expended in the trial court in the total amount of $31,031.05. Having concluded that Lind should have prevailed in the trial court, this award of attorney's fees is reversed. Lind is entitled to recovery of attorney's fees in the trial court and on appeal.

CONCLUSION

On remand, the trial court is directed to enter judgment in favor of Lind and against PBD for $250,000, plus prejudgment interest thereon, and entry of judgment for an award of attorney's fees to Lind in the trial court and on appeal.

COLEMAN, C.J., and GROSSE, J., concur.

Review denied at 113 Wn.2d 1021 (1989).