19 F.3d 25
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALOHA LUMBER CORPORATION, Plaintiff-Appellant,
v.
BOISE CASCADE CORPORATION, Defendant-Appellee.
 No. 92-36729.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 2, 1994.
Decided Feb. 18, 1994.
 
 Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Aloha Lumber Corporation appeals a judgment by the district court holding that its agreement with Boise Cascade Corporation to pay $500,000 for the right to unilaterally terminate its obligations under a $43.2 million real estate purchase agreement was a valid and enforceable liquidated damages clause under Washington law. We affirm.
 
 
 3
 Aloha Lumber entered into a written agreement to purchase for $43.2 million approximately 89,000 acres of prime Northwest timberland owned by Boise Cascade. The sale was contingent on Aloha Lumber's ability to obtain financing. Pursuant to section 2.1 of the purchase and sale agreement, Aloha Lumber transferred $500,000 to Boise Cascade in partial payment of the purchase price. Section 2.2 of the agreement provided that "[i]n the event Aloha is unable to secure financing, then Aloha may terminate this Agreement without further liability to Boise Cascade, provided that Boise Cascade shall retain the $500,000 down payment."
 
 
 4
 Aloha Lumber claims that Boise Cascade suffered no actual damages as a result of Aloha Lumber's inability to close the purchase agreement, and therefore that section 2.2 constitutes an unenforceable penalty. Boise Cascade responds first that the $500,000 deposit is consideration for what it characterizes as a valid termination clause. In the alternative, Boise Cascade argues that if the $500,000 payment is to be considered an earnest money deposit, then the payment is valid as liquidated damages.
 
 
 5
 The district court upheld the payment, finding that it was a valid termination clause. In addition, the district court applied the two-part test used by Washington courts to determine whether a stipulated damages clause constitutes an unenforceable penalty, and further upheld section 2.2 as a valid liquidated damages clause.
 
 
 6
 We review de novo the district court's interpretation of Washington law. Brooks v. Hilton Casinos Inc., 959 F.2d 757, 759 (9th Cir.), cert. denied, 113 S.Ct. 300 (1992). We are bound to follow the decisions of Washington state's highest court in interpreting its law. See Meusy v. Montgomery Ward Life Ins. Co., 943 F.2d 1097, 1099 (9th Cir.1991). If no ruling exists from the Washington Supreme Court, we must follow intermediate appellate decisions unless convinced by other persuasive data that the state's high court would decide otherwise. Id.
 
 
 7
 I. Enforceability of the Purchase and Sale Agreement
 
 
 8
 A termination clause requires consideration to be valid. Otherwise, such a clause will be held to be an unenforceable illusory promise. See 17A Am.Jur.2d Contracts Sec. 560 (1993). Thus, there is a very fine line separating termination clauses from liquidated damages clauses. See, e.g., Watson v. Ingram, 851 P.2d 761, 762-763 (Wash.Ct.App.1993), review granted, 1994 Wash.Lexis 15 (1994) (holding that a contractual clause titled "Termination" was an enforceable liquidated damages clause). Nevertheless, we hold that sections 2.1 and 2.2 of the purchase and sale agreement are valid under either characterization.
 
 
 9
 Washington courts have generally applied a two-part test to determine whether the retention by the vendor of an earnest money deposit pursuant to a real estate sales contract is invalid as a penalty. The damages stipulated must be (1) a reasonable forecast of just compensation for the breach that may occur, and (2) the damages caused by the breach must be incapable or very difficult of accurate estimation. Management, Inc. v. Schlassberger, 235 P.2d 293, 297 (Wash.1951); Restatement of Contracts Sec. 339, at 552 (1932)).
 
 
 10
 The district court found that the $500,000 partial payment made by Aloha Lumber was a reasonable forecast of the potential damages for nonperformance of the contract in view of the risks to which Boise Cascade subjected itself by taking 89,000 acres of its prime Northwest timberland off the market during the closing period. These risks included the effect on Boise Cascade's stock price of publicly announcing a deal that it later might have to withdraw, overhead costs associated with continuing to manage the unpurchased land, and the loss of the use of the proceeds from the sale until another purchaser could be found. The district court did not make a specific finding that the damages caused by Aloha Lumber's termination of the contract were incapable or very difficult to accurately estimate. However, the court did contrast the present case to a prior Washington case in which damages were easily calculated and no actual loss appeared to have occurred. See Lind Building Corp. v. Pacific Bellevue Developments, 776 P.2d 977 (Wash.Ct.App.1989).
 
 
 11
 Aloha Lumber contends that the district court misapplied Washington law regarding stipulated damages. Relying on Lind Building Corp. v. Pacific Bellevue Developments, Aloha Lumber argues that Boise Cascade suffered no actual damages and thus should not be allowed to retain the $500,000 partial payment. In Lind Building Corp., Lind agreed to purchase real estate from Pacific Bellevue Developments for approximately $4 million. Lind paid $20,000 as an earnest money deposit on the date of execution of the agreement, and over the next several months made a series of additional deposits totalling $230,000. Lind eventually defaulted on the agreement, and Pacific Bellevue Developments retained the $250,000 as liquidated damages, in addition to eventually selling the property to a different purchaser for a little more than $5 million. The Washington Court of Appeals held that the $250,000 payment constituted a penalty and was invalid. Id. at 981-982.
 
 
 12
 In so holding, the Lind Building Corp. court added a third prong to the test set forth in Management, Inc. v. Schlassberger, 235 P.2d 293 (Wash.1951). A stipulated damages clause will be held invalid as a penalty if the retained deposit is substantial and the actual loss is minimal or nonexistent. Lind Building Corp., 776 P.2d at 983. Although never explicitly stated by Washington courts prior to Lind Building Corp., this requirement has been implicit in the analysis under the first prong of the Management, Inc. test, i.e., whether the retained deposit constitutes a reasonable forecast of just compensation for the breach that may occur. See, e.g., Northwest Collector, Inc. v. Enders, 446 P.2d 200, 206 (Wash.1968) ("A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty.")
 
 
 13
 If the Lind Building Corp. decision is taken to its logical extreme, however, defaulting purchasers will be given incentive to litigate whether actual damages occurred. This would defeat a major public policy behind stipulated damages clauses--the avoidance of costly and time-consuming litigation. See Watson v. Ingram, 851 P.2d 761, 767 (Wash.Ct.App.1993), review granted, 1994 Wash.Lexis 15 (1994) (public policies favoring stipulated damages clauses in agreements between sophisticated parties include "certainty, assurance that contract will be performed, and avoidance of litigation."); Note, "Keep The Change!": A Critique of the No Actual Damages Defense to Liquidated Damages, 65 Wash.L.Rev. 977, 991-992 (1990) (no actual injury defense negates utility of liquidated damages clause). For this reason, subsequent legislation and case law have sought to limit the effect of Lind Building Corp. See Wash.Rev.Code Sec. 64.04.005 (1992) (creating safe harbor for liquidated damages equal to 5% of the purchase price or below in real estate sale agreements entered into after July 28, 1991); Watson v. Ingram, 851 P.2d at 767. The Washington Court of Appeals recently held in Watson v. Ingram that
 
 
 14
 [s]o long as the deposit amount agreed upon is not so disproportionate to possible damages as to be unconscionable, when estimated prospectively from the time the contract was formed, the terms of the earnest money agreement should be enforced without regard to the retrospective calculation of actual damages or the ease with which they may be proven. To the extent these views conflict with this court's opinion in Lind, 55 Wash.App. 70, 776 P.2d 977, we decline to follow that opinion.
 
 
 15
 Id. at 765-766.
 
 
 16
 The Watson v. Ingram court held that stipulated damages that amounted to less than five percent of the entire real estate purchase price were not unreasonable, regardless of actual damages suffered. Id. at 765. Here, the partial payment of $500,000 was a mere 1.2% of the purchase price of $43.2 million, substantially less than the five percent deposit upheld in Ingram. Under Ingram, we are therefore compelled to uphold Sec. 2.2 of Boise Cascade's purchase and sale agreement as a valid liquidated damages clause.[1]
 
 II. Attorneys' Fees
 
 17
 Finally, Boise Cascade requests that it be awarded its attorneys' fees in the district court and on appeal. In support of this request, Boise Cascade points to Sec. 17.3 of the purchase and sale agreement, which provides that
 
 
 18
 [e]ach party shall indemnify and hold the other harmless against all losses, liabilities, costs and expenses, including reasonable attorneys' fees resulting from or arising out of breaches of any covenant, warranty, representation or agreement of the indemnifying party contained herein.
 
 
 19
 Aloha Lumber replies that Sec. 17.3 only provides for attorneys' fees in the case of an action at law for breach of contract, and that the present action is one in equity for declaratory relief.
 
 
 20
 Washington law provides that a prevailing party is entitled to reasonable attorneys' fees if the contract that is the subject of the action authorizes such an award. Wash.Rev.Code Sec. 4.84.330 (1992); Herzog Aluminum, Inc. v. General Am. Window Corp., 692 P.2d 867 (Wash.Ct.App.1984) (construing Sec. 4.84.330 to apply to bilateral contractual attorneys' fees provisions as well as unilateral). Contrary to Aloha Lumber's suggestion, Washington courts have not restricted the award of attorneys' fees pursuant to contractual provisions to parties seeking only legal remedies. See, e.g., Stryken v. Panell, 832 P.2d 890, 893 (Wash.Ct.App.1992) (award of attorneys' fees proper even though contract declared void and unenforceable); Hemenway v. Miller, 776 P.2d 710, 716-17 (Wash.Ct.App.1989) (award of attorneys' fees proper where plaintiff sued to discharge obligations on note).
 
 
 21
 Under Washington law, an action is on a contract for purposes of a contractual attorneys' fees provision if the action arose out of the contract and if the contract is central to the dispute. Seattle First Nat'l Bank v. Washington Ins. Guaranty Ass'n, 804 P.2d 1263, 1270 (Wash.1991); but see Stevens v. Security Pacific Mortgage Corp., 768 P.2d 1007 (Wash.Ct.App.1989) (no fees awarded to defendant commercial bank that had successfully defended borrower's declaratory judgment action, where contractual fees provision applied only if lender accelerated note upon borrower's breach). Here, the purchase and sale agreement is the source of this action and central to the dispute. We therefore remand this case to the district court for determination of the reasonable attorneys' fees to be awarded Boise Cascade.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Furthermore, we find that section 2.2 of the purchase and sale agreement at issue would be valid even under the more stringent test of Lind Building Corp. Under the second prong of the Lind Building Corp. test, the retained deposit must be substantial and the actual loss minimal or nonexistent in order for a stipulated damages clause to be held an unenforceable penalty. Lind Building Corp., 776 P.2d at 983. Here, the partial payment of $500,000 equalled approximately 1.2% of the purchase price, in contrast to the substantial deposit in Lind Building Corp. of more than eight percent. Here also the district court found that Boise Cascade suffered damages as a result of Aloha Lumber's decision to terminate the agreement that were not inconsequential