[No. 6719.  Decided March 17, 1908.]

J. F. Canady, *Respondent*, v. A. H. Knox *et al.*, *Appellants.*[1]

CONTRACTS—CONSTRUCTION—RESTRICTION ON OCCUPATION—BREACH OF CONDITIONS.  A contract for the sale of a butchering business, which stipulated that the vendor will not enter into such business in the town of A for a period of three years, nor kill any animal except for his private use, is violated where the vendor helped to kill animals for sale in such town and drove a delivery wagon for a rival concern within the stipulated period and territory.

APPEAL—DECISION—LAW OF CASE.  A decision of the supreme court on a former appeal that the sum of $2,000, stipulated to be paid on the violation of a contract not to enter into the butchering business, was stipulated damages and not a penalty, becomes the law of the case on a retrial, and fixes the damages upon a breach of the contract being shown.

Appeal from a judgment of the superior court for Lincoln county, Warren, J., entered December 19, 1906, in favor of the plaintiff, after discharging the jury at the close of the testimony, in an action on contract.  Affirmed.

*Merritt, Oswald & Merritt*, for appellants.

*Dye & Reiter* and *Neal, Sessions & Myers*, for respondent.

CROW, J.—This action, which was commenced by J. F. Canady against A. H. Knox and Mrs. A. H. Knox, his wife, to recover liquidated damages for the breach of a contract, has heretofore been before this court, being reported in 43 Wash., at page 567, 86 Pac. 930, where a full statement of the pleadings and a copy of the written contract may be found.  After the remittitur had been filed in the superior court, the cause came on for trial before the court and a jury.  The plaintiff called various witnesses who gave testimony tending to show that shortly after the defendant Knox had sold his meat market, fixtures, business, and good will, to the

[1]Reported in 94 Pac. 652.

plaintiff, he commenced work in some capacity in a new meat market established in Almira; that he engaged in cutting meat therein; that he had killed stock for purposes other than his own private use; that he drove a butcher's delivery wagon to various points in and around Almira and peddled meat; that the market was conducted under the name of "Farmers Meat Market;" that it was advertised in a newspaper in the name of one Flynn; that defendant in substance told various witnesses he was going into the meat market business; that when he did so, plaintiff's business would amount to nothing; that Flynn had agreed to permit him to do business in his name, and that he was entitled to conduct a meat market in Almira if he wished to do so, without violating any of the terms of his contract. No evidence of the actual amount of damages sustained was offered, defendants' counsel stating that he understood there was no issue on that question, as this court had decided the same. The defendant himself was called by the plaintiff and testified as follows:

"Q. Did you participate in the butchering or killing of animals during that time, cattle or beef, hogs, sheep or anything of that nature that was sold through that shop? (the new market) . . . A. I helped kill a few. Q. Did you, during the time that shop was in operation, participate in or drive any wagons in selling meat in the country or otherwise? A. Yes, I drove a wagon in the country most of the time myself. Q. Did you sell meat from that wagon? A. Yes."

The plaintiff thereupon moved for judgment for $2,000, liquidated damages, upon the ground that the defendant had admitted upon the witness stand facts constituting a violation of the contract upon his part. Before this motion was decided by the trial judge, defendants' attorney offered to prove by the defendant, upon cross-examination, the length of time the new business had been conducted; that the defendant drove a wagon for one Mr. Fynn; and that the plaintiff had sold his business previously purchased from the defendant. These offers were, upon the plaintiff's objection, refused. No further evidence being offered, the trial judge

discharged the jury and entered judgment in favor of the plaintiff for $2,000 liquidated damages. The defendants have appealed.

It is contended that the trial judge erred in sustaining respondent's objection to the offers of evidence on cross-examination of appellant above mentioned. Apparently it was appellant's contention that he was working for Fynn and not for himself. The evidence offered by the cross-examination was immaterial and properly rejected. The written contract contains the following stipulation:

"That the party of the first part [appellant] agrees with the party of the second part [respondent] that he will not enter into the butcher business, nor kill any animals for the purpose of peddling or sale of any nature, only for his own private use in the town of Almira or adjacent territory."

His own evidence shows that he violated this agreement. He killed and butchered animals for sale in Almira, being for purposes other than his own private use. He had been engaged in the new market either as an employee or in some other capacity, and had also peddled meat in and near Almira, from a delivery wagon. The evident intention of the written contract was that the appellant should in no way compete with the respondent's business either himself personally or in any other manner, directly or indirectly. Such intent is shown by the one specified exception reserving to appellant the right to kill animals for his own private use. There would be no question of his having violated the contract even though he had been permitted to show that the new market was owned and operated by Flynn, and that he was Flynn's employee. He cites *Haley Grocery Co. v. Haley*, 8 Wash. 75, 35 Pac. 595, and insists, on the authority of that case, that by accepting employment from Flynn he did not violate his contract. In the *Haley* case the contract read:

"I undertake and agree with the Haley Grocery Company that within the period of three years from this date I will not engage in the business of wholesale or retail groceries, either in my own name or in that of another, or conduct or engage

in any such business for any other firm, person or corporation, with any share of the profits, or with any interest in the property, and with no secret or actual accounting or division of either property or profits, for my benefit, or for compensation regulated on the basis of profits or sales of property or stock."

This contract did not prohibit Haley from being employed in another grocery on a salary without further compensation. The only purpose was to prevent him from becoming personally interested in the profits of a rival business, either directly or indirectly. There is a marked difference between the Haley agreement and that of the appellant, who only reserved to himself the right to kill animals for his own private use. The fact that the respondent had disposed of the old meat market would not, if proven, have relieved appellant from liability. There is no evidence showing how much of the $3,500 purchase price had been paid by respondent for the good will of appellant's former business. For aught that appears, such good will may have been the principal consideration. It is not contended that respondent disposed of the old market before appellant had violated the contract or before the new meat market was established.

Some contention is made by appellant to the effect that the $2,000 named in the contract was a penalty, and that no actual damages had been shown. In our former opinion we disposed of this suggestion contrary to appellant's contention, and that decision has become the law of this case. The appellant at no time asked to introduce evidence in addition to that above mentioned. His own testimony sustained respondent's allegation that he had violated the contract. He and respondent had agreed on the stipulated damages for such violation, and the court properly directed a judgment in respondent's favor.

The judgment is affirmed.

HADLEY, C. J., MOUNT, ROOT, and FULLERTON, JJ., concur.